UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
-------------------------------- -----------

MICHAEL VanWORMER,
                        Plaintiff,

        vs                                        5:03-CV-1121

GRUPPO RIZZI 1857, s.r.l.; LACKAWANNA
LEATHER; and LEATHER-TECH INTERNATIONAL,
INC.,
                        Defendants.

----------------------------------------

LEATHER-TECH INTERNATIONAL, INC.,
                        Third-Party Plaintiff,
        vs

CARVILLE NATIONAL LEATHER CORP.,
                        Third-Party Defendant.

----------------------------------------

| APPEARANCES: | OF COUNSEL: |
|---|---|
| O'CONNOR, O'CONNOR, BRESEE & FIRST, PC<br>Attorneys for Plaintiff Michael VanWormer<br>20 Corporate Woods Boulevard<br>Albany, New York 12211 | DENNIS A. FIRST, ESQ.<br>PETER BAIRD JOSLIN, JR., ESQ. |
| SMITH, SOVIK, KENDRICK & SUGNET, PC<br>Attorneys for Defendant / Third-Party Plaintiff<br>   Leather-Tech International, Inc.<br>Suite 600<br>250 South Clinton Street, Suite 600<br>Syracuse, New York 13202-1252 | LAURENCE F. SOVIK, ESQ. |
| PETRONE & PETRONE, PC<br>Attorneys for Third-Party Defendant Carville<br>   National Leather Corp.<br>108 West Jefferson Street, Suite 305<br>Syracuse, New York 13202 | DAVID H. WALSH, IV, ESQ.<br>J. WILLIAM SAVAGE, ESQ. |

DAVID N. HURD
United States District Judge

## MEMORANDUM-DECISION and ORDER

I. **INTRODUCTION**

Plaintiff Michael VanWormer ("plaintiff" or "VanWormer") commenced this action for personal injuries, against Gruppo Rizzi 1857 s.r.l. ("Rizzi"), Lackwanna Leather ("Lackwanna"), and Leather-Tech International, Inc. ("Leather-Tech"). He brings five causes of action in products liability against each of the three defendant corporations. Plaintiff alleges that the defendants are liable for designing, manufacturing, repairing, or selling the Rizzi MRPG-6 sammying and setting machine ("machine") that caused the injuries he sustained during the course of his employment. Rizzi and Lackwanna defaulted. Leather-Tech filed an answer to the plaintiff's complaint and crossclaims against Rizzi and Lackwanna.

Leather-Tech also commenced a third-party action against plaintiff's employer, Carville National Leather Corp. ("CNL Corp."). Leather-Tech asserts the following claims against CNL Corp.: (1) that CNL Corp. caused, contributed to, exacerbated, or aggravated the injuries that VanWormer asserts in his action and CNL Corp. is liable to Leather-Tech, in whole or in part, for any judgment or other recovery obtained by plaintiff in his action against Leather-Tech; and (2) the relative responsibility and culpability among the defendants to the original action and CNL Corp., if any, should be apportioned and determined in accordance with the statutory and decisional law of the State of New York. CNL Corp. filed a summary judgment motion, to which Leather-Tech did not oppose by a letter to the court filed March 22, 2007. (<u>See</u> Docket No. 26.) As a result, the third-party complaint was dismissed on April 17, 2007.

On April 9, 2007, Leather-Tech filed a motion for summary judgment, pursuant to Federal Rule of Civil Procedure 56(b) based on the argument that Leather-Tech did not replace the allegedly defective device that was involved in VanWormer's accident. VanWormer opposes this motion.

In addition, on April 27, 2007, Leather-Tech filed a motion for reconsideration, pursuant to Federal Rule of Civil Procedure 60(b), of the third-party complaint dismissal. Leather-Tech argues that there was a subsequent change in the law that would have altered its decision had it been rendered prior to its letter of no opposition. CNL Corp. opposes this motion.

Oral argument for both motions was heard on June 26, 2007, in Utica, New York. Decision was reserved.

## II. FACTS

The following facts are undisputed unless otherwise noted.

Rizzi designed and manufactured the machine. Lackwanna sold the machine to CNL Corp. in March 1996. The machine was not sold or purchased by Leather-Tech.

According to Leather-Tech, in March 1996, CNL Corp. asked it to evaluate the machine that CNL Corp. had just purchased from Lackwanna. Robert Carville ("Carville"), President of CNL Corp., testified that he asked Leather-Tech to make sure the machine was operational and that it was in good working condition. (Carville Dep. at 18-19.) More specifically, he asked Leather-Tech to make sure that CNL Corp. would be able to "install it, connect it, and operate it without having any maintenance issues" or unexpected mechanical problems. Id. at 19, 95-96. CNL Corp. intended for Leather-Tech to return the machine to it in a condition "as close to original manufacture as possible." Id. at 103.

According to CNL Corp. and Leather-Tech, Leather-Tech made no express or implied reservations regarding the design, manufacture, or safety of the machine to CNL Corp.

According to Leather-Tech, and not disputed by VanWormer, prior to the plaintiff's accident the machine had been in continuous use at CNL Corp. for almost six years without any complaints, malfunctions, or injury. According to Leather-Tech, there were no defects in either the materials supplied or the work done to the machine by Leather-Tech that either caused or contributed to the plaintiff's accident; the parts replaced by Leather-Tech and the work done by it on the machine did not in any way alter, change, or modify "the fundamental design of the machine" or the way that it functioned and operated. (Def. 7.1 Statement at 3.) Plaintiff disputes this fact and alleges that Leather-Tech replaced the safety bar on the machine, the allegedly defective device that was involved in his injury.

On January 9, 2002, VanWormer was injured at CNL Corp. in an accident that amputated several of his fingers. The incident occurred when the plaintiff and a co-worker were cleaning the felt roller on the machine. While wiping the rubber roller, the plaintiff said that he felt the roller turn in the opposite direction. It then carried his hand up into the machine, pinching his hand between the felt and rubber rollers, until his hand hit the metal rollers in the back of the machine. VanWormer lost the distal interphalangeal ("DIP") and proximal interphalangeal ("PIP") joints in his index finger, but retained his metacarpal phalangeal ("MCP") joint.

In his November 27, 2006, deposition, Carville testified that Leather-Tech did replace the allegedly defective device involved in VanWormer's injury. (Docket No. 26-7.) He physically identified the cylinder guard in a color photograph. He stated that the

allegedly defective device, that he identified in the photograph as the cylinder guard, was replaced by Leather-Tech. The deposition reflects the following testimony:

> Q. Through the ordinary operation of the machine, do the skins go over the auxiliary roll and under the slicker?
> A. Correct. It is mentioned in Exhibit 19, item 1, cylinder guard.[1]
> Q. What is that?
> A. I believe there are – I'm assuming and I'd have to look at the machine – but I am assuming that that would be the guard over the top of the felt roll.
> Q. I am going to show you Exhibit number 4, a photograph that we marked at an earlier deposition.[2] Do you see that guard on there?
> A. Yes. That would be this main guard which does in fact cover the felt roll.
> Q. So this is the long silvery looking bar that goes from one end of the machine to the other?
> A. Correct.
> Q. And was a bar of that kind on the machine when you saw it at Lackwanna?
> A. Yes.
> . . . .
> Q. Do you know what had to be done about that bar on the Rizzi machine?
> A. It was quite corroded, and I believe the original one was made out of steel of some sort, because it was quite rusty.
> Q. Was it replaced?
> A. Yes, it was.

Id. at 29-31.

Carville acknowledged that the "cylinder guard" and the "safety bar" are the same device. He did not recall CNL Corp. performing any maintenance on that device after it came into possession of the machine. Id. at 29-30, 49. Under the questioning he stated:

---

[1] Exhibit 19 is a price quote for services from Leather-Tech to CNL Corp. (Docket No. 29-18 at 5.)

[2] The photograph attached to this decision as Exhibit One is the photograph identified in Carville's deposition as Exhibit Four.

> Q. What about the safety bar; any work that was necessary to be done on the safety bar? The long bar that you identified for us in Exhibit 6 and Exhibit 4 was the one you were looking at?[3]
> A. The upper bar.
> Q. The upper bar over the feed roll?
> A. I don't recall any maintenance having to be done to that.

Id. at 49.

Carville gave further identifying information as to the appearance of the safety bar or cylinder guard and identified the device in Exhibit Four. The deposition reflects the following testimony:

> Q. Have there been any changes in the Rizzi machine since Mr. VanWormer's accident other than the new platform that was put down?
> A. The one change that was made to the cylinder guard, which is visible in Exhibit 4, is below the black and yellow safety tape marking.[4] There is a white plastic strip. That was added to extend the guard lower to the feed roll when the machine was in its closed position. It was discussed with the OSHA investigator that visited the facility after Mr. VanWormer's accident that the position of the guard is not adjustable the way it is manufactured by Rizzi. That the gap or opening between that roll and the feed roll is a factory set spacing. And it was OSHA's determination that the gap was too big for the requirements. And after discussing it with them, we recommended the addition of a plastic strip attached to that edge which is permanently attached, and not movable, to make that space smaller. And they agreed that upon completion, that modification, the machine could be released for operation.
> Q. Who put the plastic strip on?
> A. It would have been our maintenance department.
> Q. Who was it?
> A. I don't recall.

Id. at 80-81.

Almost five months after his deposition, Carville signed an affidavit dated March 15, 2007. (Docket No. 32.) In the affidavit he said when he used the phrase "cylinder

---

[3] See supra note 2.

[4] See supra note 2.

guard" in his deposition he was actually referring to the "safety bar" or "safety barrier." Id. at 1-2. He further testified that the "cylinder guard" is not the same as the "safety bar" or "safety barrier" and that the "safety bar" on the machine was not replaced by Leather-Tech. Id. at 2.

## III. DISCUSSION

### A. Leather-Tech's Motion for Summary Judgment

### 1. Summary Judgment Standard

Summary judgment must be granted when the pleadings, depositions, answers to interrogatories, admissions and affidavits show that there is no genuine issue as to any material fact, and that the moving party is entitled to summary judgment as a matter of law. Fed. R. Civ. P. 56; Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247, 106 S. Ct. 2505, 2509-10 (1986). The moving party carries the initial burden of demonstrating an absence of a genuine issue of material fact. Fed. R. Civ. P. 56; Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548, 2552 (1986). Facts, inferences therefrom, and ambiguities must be viewed in the light most favorable to the non-movant. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S. Ct. 1348, 1356 (1986).

When the moving party has met the burden, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., 475 U.S. at 587, 106 S. Ct. at 1356. To withstand a summary judgment motion, sufficient evidence must exist upon which a reasonable jury could return a verdict for the non-movant. Liberty Lobby, Inc., 477 U.S. at 248-49, 106 S. Ct. at 2510; Matsushita Elec. Indus. Co., 475 U.S. at 587, 106 S. Ct. at 1356.

Summary judgment becomes improper when credibility of a witness is crucial to the case. Arnstein v. Porter, 154 F.2d 464, 471 (2d Cir. 1946). If the moving party puts forth a deposition and the nonmoving party does not offer evidence that discredits this deposition, the moving party's deposition is not necessarily accepted as true. Id. Where judgment is based on the credibility of a witness, Rule 56 was not designed to permit a "trial by affidavits" or to foreclose the nonmoving party from examining a witness at trail. Id. However, if the change in testimony concerns a material fact, the nonmoving party must be allowed to examine this witness at trial with respect to their changed testimony. Id.

### 2. Analysis

Leather-Tech argues that it did not replace or change the allegedly defective device that caused the plaintiff's injury, so Leather-Tech cannot be liable for any injuries he suffered.[5] It relies upon the Carville affidavit of March 15, 2007.

Leather-Tech and Carville allege that in his affidavit Carville was correcting what he characterized as an "error" in his testimony. VanWormer, in response, questions Carville's credibility and points to the timing of the affidavit, one week prior to Leather-Tech's letter of no opposition to dismissal of the third-party action against his company.

A witness could misstate something in a deposition that would later need to be clarified via affidavit. However, in the present case, there is nothing unclear in Carville's deposition. During the course of his deposition, Carville verbally identified the allegedly defective device. He referred to the portion of a price quote by Leather-Tech to CNL Corp.

---

[5] In its oral argument on June 26, 2007, Leather-Tech asserted an alternative defense that if it did replace the allegedly defective device, it replaced the device in a manner that was consistent with Rizzi's specifications. Because this issue was not raised in its original papers, it need not be addressed at this time. In any event, issues of fact exist as to whether or not the device in place at the time of the accident was the original; an exact duplicate; or something else.

that referenced the device. He identified the device in a color photograph marked "Exhibit 4" as a part that Leather-Tech replaced.[6] (Docket No. 26-7 at 29-30, 49, 81; Docket No. 37-4 at 1.) Finally, he said that Leather-Tech replaced the allegedly defective device.

In his affidavit, Carville changed his testimony and stated that he did not mean to refer to the allegedly defective device as a "cylinder guard" and that the cylinder guard was located on the back of the machine and not on the front of the machine.[7] In viewing the facts in the light most favorable to the nonmoving party, this change in testimony presents a question regarding the credibility of Carville. See Fed. R. Civ. P. 56. Since there is a question regarding the credibility of a key witness, Carville, there is a question of fact for the jury to decide. See Arnstein, 154 F.2d at 470-71.

Plaintiff is not required to present evidence that contradicts Carville's affidavit in order to defeat Leather-Tech's summary judgment motion. See id. at 471. However he in fact has offered Carville's own sworn deposition testimony that discredits his subsequent sworn affidavit. The timing of the affidavit is also questionable and a subject of cross-examination. The fact that Carville first swore that the allegedly defective device was

---

[6] The photograph was taken of the front of the machine. Exhibit One attached hereto; Docket No. 37-4 at 1. The allegedly defective device is the "long silvery looking bar that goes from one end of the machine to the other" with black and yellow safety tape on the bottom portion of the bar and white plastic strip attached below the safety tape. (Docket No. 26-7 at 30, 81.)

[7] The device that Carville identified in the photograph in his deposition was the allegedly defective device, located on the front of the machine. (Docket No. 26-7 at 30.) He identified this device as the "cylinder guard" or "safety bar." Id. at 29, 49, 81. In his affidavit, Carville said that he was mistaken in his deposition and that he knows that the "cylinder guard" and the "safety bar" are not the same device. (Docket 32 at 1-2.) He said that the allegedly defective device that he identified as the "cylinder guard" is actually the "safety guard" and was not replaced by Leather-Tech. Id. at 2. According to Carville, in his affidavit he said that the "cylinder guard" is the device that was replaced by Leather-Tech and it is located in the back of the machine. Id. This guard is not located within the photograph in which Carville identified the parts that were replaced. Exhibit One attached hereto.

replaced by Leather-Tech and then swore that the device was not replaced by Leather-Tech presents a genuine issue of material fact.

Leather-Tech's motion for summary judgment will be denied.

### B. Leather-Tech's Motion for Reconsideration

#### 1. Motion for Reconsideration Standard

A motion for reconsideration should be granted if, in exercising the discretion afforded under Fed. R. Civ. P. 60(b), it is determined that this change in position was due to surprise or mistake or "any other reason justifying relief from operation of the judgment." Fed. R. Civ. P. 60 (b)(1), (6). Relief under Fed. R. Civ. P. 60(b) may only be granted in "extraordinary circumstances." Ackermann v. U.S., 340 U.S. 193, 199-202, 71 S. Ct. 209, 212-13 (1950). When a plaintiff makes a "deliberate and strategic choice to settle" and there is a subsequent change in the law that would have altered their decision had it been rendered prior to their consent, a consent decree is fully enforceable and, accordingly, a motion pursuant to Fed. R. Civ. P. Rule 60(b) should be denied. U.S. v. Bank of N.Y., 14 F.3d 756, 759 (2d Cir. 1994).

#### 2. Analysis

Leather-Tech moves to reconsider the Order of April 17, 2006, that dismissed its third-party complaint against CNL Corp. Leather-Tech argues that there was a change in the law that would have altered its decision not to oppose CNL Corp.'s summary judgment motion.

CNL Corp. moved for summary judgment on the grounds that the plaintiff did not suffer a grave injury as defined by § 11 of the New York State Workers Compensation Law (includes "loss of an index finger"). At that time, New York courts uniformly held that only

the loss of the entire finger, and not simply loss of use, would constitute a grave injury.[8] However, on April 17, 2007, the very same day the third-party complaint was dismissed, the Appellate Division, Second Department, held in Castillo v. 711 Group, Inc. that loss of the DIP and PIP joints amounted to the "loss of his index finger" even though the plaintiff still retained the MCP joint.  833 N.Y.S.2d 642, 644 (N.Y. App. Div. 2d Dep't 2007). Leather-Tech argues that if this decision was available at the time CNL Corp. made its motion for summary judgment, Leather-Tech would have opposed the motion on the basis of Castillo.[9]  Id.

While Castillo directly relates to the facts in the present case,[10] Leather-Tech filed a letter of no opposition in response to CNL Corp.'s motion for summary judgment.  Id. (See Docket No. 26.)  By making the strategic decision for whatever reason not to oppose CNL Corp.'s motion, Leather-Tech cannot now be granted a Rule 60(b) motion for

---

[8] At the time of its letter of no opposition (March 22, 2007) Leather-Tech was well aware of the status of the law and makes no claim of "mistake, inadvertence, surprise, or excusable neglect." See Fed. R. Civ. P. 60(b)(1).

[9] Castillo specifically mentions that the plaintiff retained the MCP joint and the amputation included both the DIP and PIP joints and resulted in 100 percent loss of function in the plaintiff's index finger.  833 N.Y.S.2d at 644.  Castillo distinguished previous case law in that the prior cases held that loss of half of a finger or an amputation that left the PIP joint intact would not constitute the loss of a finger.  Id.  But see Blackburn v. Wysong & Miles Co., 11 A.D.3d 421, 422 (N.Y. App. Div. 2d Dep't 2004) (holding that loss of half of the index finger is not enough to establish a "grave injury" when the plaintiff's finger was amputated at the base of the middle phalanx and retained the PIP joint); Mentesana v. Bernard Janowitz Constr. Corp., 36 A.D.3d 769, 770 (N.Y. App. Div. 2d Dep't 2007) (holding that amputation of the index finger to the PIP joint did not constitute loss of the index finger).  Previously, New York case law held that an amputation that left the PIP joint intact would not constitute loss of a finger and would not be enough to establish a "grave injury" as defined by § 11 of the New York State Workers Compensation Law.  See Blackburn, 11 A.D.3d at 422; Mentesana, 36 A.D.3d at 770.  Thus Castillo does not overrule previous case law, as suggested by Leather-Tech.  See 833 N.Y.S.2d at 644.

[10] Like the plaintiff in Castillo, VanWormer retained the MCP joint and the amputation included both the DIP and PIP joints and resulted in 100 percent loss of function in his index finger.  See 833 N.Y.S.2d at 644.  Therefore, Leather-Tech could have made those same arguments plaintiff made in the Castillo case in an attempt to save its third-party action.  Id.  It elected not to do so, perhaps in exchange for the Carville affidavit and the hope that plaintiff's action against it would be dismissed.

reconsideration based on a change in the law. See Bank of N.Y., 14 F.3d at 759. There is always the possibility of a change in the law and that is always the chance parties take in consenting to or not opposing motions or demands by adversaries. By specifically not opposing CNL Corp.'s motion, Leather-Tech waived any right to re-open the third-party action. Otherwise, every time there is a possible change in the law countless actions might arise from the dead that had been previously dismissed by settlement, consent, or without opposition.

      Leather-Tech's motion for reconsideration will be denied.

## IV. CONCLUSION

      There is a question of material fact regarding Carville's credibility that must be decided by a jury.

      By making the deliberate strategic decision not to oppose CNL Corp.'s motion for summary judgment, Leather-Tech has failed to provide any "reason justifying relief from the operation of the judgment" based on an alleged change in the law. Fed. R. Civ. P. 60(b)(6).

      Therefore, it is

      ORDERED that

      1. Leather-Tech's motion for summary judgment is DENIED.

      2. Leather-Tech's motion for reconsideration is DENIED.

      IT IS SO ORDERED.

_____
United States District Judge

Dated: July 20, 2007
       Utica, New York.

**Exhibit One.**

